## George Dyer v. Frank E. Tyler.

*Contract of Service—Reservation of right to pay a debtor's laborers—Substituted liability.*

The owner of a saw-mill sold it and took the purchaser's notes. He also agreed with the purchaser to furnish him logs for sawing for which he was to pay a certain sum per thousand which was to be applied on the notes and for mill expenses. The owner had employed a laborer with whom he kept a running account at his store and who went on working for the purchaser on the same terms as before. *Held* that the agreement for sawing did not make the owner liable to the laborer for his services to the purchaser.

A contract for services wherein one party reserves the right to pay
the other's laborers in order to secure himself against the risk of non-
performance does not make the party reserving such a right the
employer of the laborers or exonerate the other party from paying
them himself. The payments are made by virtue of an agency, and
on the employer's account.

A third person can be made liable to a laborer employed by another
only by some written agreement making him collaterally responsible,
or by some complete and lawful obligation by which for a valuable
consideration it was agreed between all parties that his liability
should be substituted.

Error to Bay. Submitted June 20. Decided Oct. 31.

ASSUMPSIT. Defendant brings error. Affirmed.

*Camp & Brooks* and *B. M. Thompson* for appellant.

*Shepard, Lyon & Clark* for appellee.

CAMPBELL, J. Dyer sued Tyler for labor done in and
about his saw-mill work. The defense was that one Luther
Gordon was the person to whom Dyer was to look for pay,
and that if Tyler was liable Dyer had been paid by Gordon.
The chief controversy was whether Tyler was liable at all
under the hiring.

It appeared that Gordon had owned the mill, and during
his ownership had employed Dyer, and paid him largely out
of his store;—keeping a running account with him for work
and wages, as well as some other items. Gordon sold the
mill to Tyler and took his notes for a part or all of the pur-
chase price. He agreed with Tyler to furnish him logs for
sawing, which sawing and piling were to be paid for at $2.50
a thousand, and this price was to be applied on the notes and
for mill expenses. Tyler employed Dyer, as is claimed, on
the same terms as he was formerly employed on, and it is also
claimed he was to get his pay from Gordon. An account
was kept up on Gordon's books, and Dyer was both charged
with articles furnished and credited with labor as well as
other things. The main question was whether Tyler was
exonerated and Gordon the real debtor. The jury found

otherwise and Tyler claims the court did not properly charge them.

In order to see how this was it becomes necessary to examine into the real nature of the relations of these parties. The court below, against Tyler's objections, held among other things that the contract between Gordon and Tyler did not by its terms declare who should handle the funds in the management of the business, and that unless Gordon was brought into direct contract relations with Dyer, Tyler was not discharged. We are very much inclined to think this charge was too favorable to Tyler. It certainly did him no wrong.

By the express terms of this agreement Tyler was to do Gordon's sawing and to be paid for it. The price was his, and to be used for his benefit. Part of it was to pay his notes, and part of it was to be applied by some one on expenses. But it would do violence to the language of the agreement to consider these expenses as those of any one but Tyler. If they were, then he certainly was not doing the work for which he was to receive $2.50 a thousand. That sum was to be his reward for sawing. It was not for the use of his mill for sawing to be done by some one else. The contract on its face—giving it the broadest possible interpretation in favor of Gordon's right to handle the money, was like many railroad and other contracts where one party reserves the right to pay the other's laborers—not because he becomes their employer, but to make himself more secure against the non-performance of work which he wishes to have done and is willing to pay for. There is nothing in such a contract which makes the party reserving such a right the employer of the men, or which exonerates the employer from his obligation to pay them himself. All payments so made are paid by virtue of agency, and on the employer's account. There is nothing in this record tending to show that Tyler employed Dyer as Gordon's agent, or that the sawing was Gordon's business. Neither is the agreement referred to one which bound Gordon to pay employees. The saw-mill was to be employed in paying notes as well as expenses, and the writing does not compel Gordon, if he is to apply the

money, to pay the expenses in preference to the notes, or to pay all the expenses.

If Tyler was Dyer's employer, then Gordon could only be made liable by some agreement in writing whereby he became collaterally responsible, or by some complete and lawful obligation by which for a valuable consideration it was agreed between all parties that his liability should be substituted. If Gordon made no contract with Dyer to take Tyler's place in the liability, Tyler must certainly continue liable. Somebody must be in contract relations with Dyer and bound to pay him.

We do not find anything in the case tending to prove any such substitution of liability, and therefore there is nothing to exonerate Tyler from responsibility for any part of the debt not actually paid by Gordon. The court, so far as we can gather from the record, was overliberal in allowing the case to go to the jury at all on any theory that Tyler ever ceased to be subject to liability for unpaid debts. The charge was not one of which he can complain.

Upon the question of actual payment, we do not think the charge open to any criticism. It presented all the questions to the jury fairly and fully, and gave Tyler the benefit of any possible interpretation of testimony bearing in his favor. There is little in the alleged errors that is not based on the idea of Tyler's becoming exonerated from personal responsibility, and what has been said on this subject already disposes of all such considerations. It can make no difference in what way the accounts were kept on Gordon's books with Dyer, if he did not actually, in such accounting receive pay for his labor. The mingling of items would not make it difficult to determine this if the items themselves were properly entered. And without some agreement to that effect Gordon could not apply his private account against Dyer on his labor claim against Tyler.

We find nothing in the rulings or evidence that seems, under these views, to demand further attention. We think no error appears, and the judgment must be affirmed with costs.

The other Justices concurred.